IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT L. HYDE,

                Plaintiff,

  v.                                                OPINION and ORDER

LELAND DUDEK,
Acting Commissioner of the Social Security                   23-cv-882-jdp
Administration,

                Defendant.[1]

---

Plaintiff Robert L. Hyde seeks judicial review of a final decision of defendant Leland Dudek, Acting Commissioner of the Social Security Administration, finding that Hyde was not disabled within the meaning of the Social Security Act. Hyde contends that administrative law judge (ALJ) Michael Schafer erred by failing to adequately consider Hyde's subjective symptoms and the various medical opinions in the records.

The court concludes that the ALJ did not adequately explain the basis for rejecting Hyde's alleged physical limitations, so the court will remand for further proceedings on that issue. But Hyde has not shown that the ALJ erred in his assessment of Hyde's mental limitations.

---

[1] The court has updated the caption in accordance with Federal Rule of Civil Procedure 25(d).

BACKGROUND

Hyde applied for disability benefits, alleging disability beginning in September 2020. R. 18.[2] In a June 2023 decision, the ALJ found that Hyde suffered from severe impairments related to his back, hip, and hands. *Id.*[3] In light of those impairments, the ALJ found that Hyde had the residual functional capacity (RFC) to perform light work with some additional restrictions, including those related to climbing, bending, stooping, handling, and fingering. R. 23. As for severe mental impairments, the ALJ found that Hyde suffered from anxiety and depression. R. 18. The ALJ described Hyde's mental limitations as follows:

> He could understand, remember, or carry out only simple instructions and routine tasks in a work environment with few, if any, changes in the work duties or expectations. He would be limited to a work environment with no fast-paced production quota or rate (any production requirements should be more goal oriented, such as based on a daily or weekly or monthly quota).

R. 23. Relying on the testimony of a vocational expert, the ALJ found that Hyde was not disabled because he could perform jobs that are available in significant numbers in the national economy, such as router, routing clerk, and sales attendant. R. 33.

Hyde now appeals to this court. On appeal, the court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might

---

[2] Record cites are to the administrative transcript located at Dkt. 7.

[3] The specific physical impairments were thoracolumbar spondylosis without myelopathy or radiculopathy, lumbar spine disorder with radiculopathy, dysfunction of the left hip, and tendinopathy of the bilateral hands with contractures. R. 18. The ALJ also found that asthma was a severe impairment, but Hyde does not make any arguments based on that impairment.

accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

ANALYSIS

Hyde asserts that the ALJ made two types of errors, both of them related to an alleged failure to articulate his reasoning. First, Hyde says that the ALJ did not adequately explain why he did not fully credit Hyde's subjective symptoms. Second, Hyde says that the ALJ did not adequately explain why he did not credit the medical opinions that favored Hyde.

A. **Subjective symptoms**

Hyde testified during the administrative hearing that because of his pain he cannot walk for more than 15 minutes, he cannot stand for more than 15 to 20 minutes, he cannot sit for more than 45 minutes, and it is "hard to do anything" with his left hand, even grip a coffee cup, because of the pain and contractures in that hand. R. 23, 66. If credited, these limitations would render Hyde unable to perform light work, which requires the ability to walk and stand up to six hours of an eight-hour workday and the ability to carry up to 20 pounds. *Murphy v. Colvin*, 759 F.3d 811, 818 (7th Cir. 2014).[4] The ALJ concluded that "the objective evidence and other evidence does not support" Hyde's statements about the intensity, persistence, and limiting effects of his symptoms. R. 24.

---

[4] In his reply brief, Hyde discusses subjective symptoms related to his mental health. Dkt. 13. Hyde's reply brief also includes several new arguments about other issues. But Hyde forfeited all of these issues by failing to discuss them in his opening brief. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016).

In arguing that the ALJ erred, Hyde cites *Villano v. Astrue*, which states that an ALJ's credibility analysis "must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." 556 F.3d 558, 562 (7th Cir. 2009). In most newer cases, the court of appeals is not so demanding, holding only that "an ALJ [must] give[] specific reasons supported by the record" for discrediting subjective symptoms. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278–79 (7th Cir. 2022); *see also Thorlton v. King,* 127 F.4th 1078, 1082 (7th Cir. 2025). This court need not resolve the tension in the standards because the ALJ did not satisfy either one.

After concluding that the medical evidence did not support Hyde's subjective symptoms, the ALJ devoted approximately four pages of his decision to summarizing the evidence. R. 24–27. But as this court has explained before, "a summary isn't a substitute for analysis." *Plemon v. Kijakazi*, 2022 WL 842914, at *3 (W.D. Wis. 2022). It is not clear from the ALJ's summary what evidence he was relying on to support his decision or why he found the evidence favoring Hyde less persuasive than the unfavorable evidence. "[T]he ALJ must . . . explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). The ALJ did not do that in this case.

The ALJ did include some analysis in his discussion of the state-agency physicians' opinions. R. 29. The ALJ did not connect this analysis to Hyde's subjective symptoms, but district courts are "to read the ALJ's decision as a whole," *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004), and may "not discount [the ALJ's reasoning] simply because it appears

4

elsewhere in the decision." *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015). So the court will consider that analysis here.

State-agency physicians William Fowler and Marc Young reviewed Hyde's medical records and concluded that Hyde could perform light work with some additional limitations related to bending and grasping. R. 87, 100. The ALJ found the opinions to be partially persuasive, but that they did not include sufficient postural limitations. R. 29.

In explaining why the state-agency physicians' postural limitations were not sufficient, the ALJ noted that examination demonstrated that Hyde had left groin pain with internal and external rotation of his left femur, he was limited in manipulating his upper extremities because of back pain, he had tenderness to palpation in parts of his spine, and he had reduced range of motion in his spine. R. 29. But the ALJ concluded that Hyde could still perform light work with additional limitations for three reasons: (1) he consistently had a normal range of motion in his arms; (2) he consistently had intact balance, coordination, and normal gait; and (3) a thoracic ablation (using radiofrequency to destroy nerves that transmit pain signals) resulted in 50 to 60 percent improvement in his pain. *Id.*[5]

The court concludes that the ALJ's analysis does not provide enough detail and clarity to allow meaningful review. The ALJ did not explain why the evidence he cited supported some limitations and not others, and he did not explain how the medical evidence he cited was inconsistent with Hyde's subjective symptoms.

---

[5] The commissioner cites other evidence, including the results of a "Oswestry" test and a straight-leg test. The ALJ noted these tests, but he did not rely on them, so neither the commissioner nor this court may do so either. *See Poole v. Kijakazi*, 28 F.4th 792, 797 (7th Cir. 2022).

5

As an initial matter, the ALJ's analysis ignored evidence that favored Hyde, including his lengthy work history, his extensive treatment, and his limited activities of daily living. Specifically, before filing his application, Hyde had worked consistently as an industrial vacuum operator for more than 15 years, R. 204–08, he received a wide range of treatment for his pain, including physical therapy, steroid injections, ablations, and medications (even narcotics) without long-term success, R. 326–29, 330, 337, 346, 484, 492, 495, 601, 604, 606, 631, 658, and he reported that folding laundry was the only household chore he performed, and he needed significant help from his family to do basic things like preparing a meal and buttoning a shirt, R. 69–70, 223–25. These are all matters that are relevant to the credibility analysis. See 20 C.F.R. § 404.1529(c); SSR 96–7p. The ALJ may not cherry-pick the record. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697–98 (7th Cir. 2016).

As for the range of motion in Hyde's arms, the ALJ did not explain the relevance of this evidence. Hyde's severe impairments related to pain in his back, hip, and hands, not his arms. The ALJ did not point to evidence undermining Hyde's stated difficulties with grasping things with his left hand.

The examination findings regarding Hyde's balance, coordination, and gait present a closer question because those could have some bearing on Hyde's ability to walk and stand. But the ALJ did not cite any medical opinions for the proposition that normal balance and gait over a short distance necessarily shows that a claimant can walk and stand for a longer time. It is well established that the ALJ may not serve as his own medical expert. *Durham v. Kijakazi*, 53 F.4th 1089, 1095 (7th Cir. 2022). In any event, the ALJ did not weigh the findings he relied on against those that favored Hyde, such as his reduced range of motion and pain during rotation. Again, the ALJ may not focus solely on evidence that favors his decision.

6

As for the improvement in Hyde's symptoms after the ablation, the court of appeals has explained that improvement by itself provides little insight into a claimant's ability to work without first establishing a baseline of the claimant's functional abilities, *Murphy*, 759 F.3d at 819, something the ALJ did not do. In any event, the ALJ did not consider Hyde's statement that the improvement lasted only six months, R. 600, so the improvement is not useful evidence of Hyde's abilities over the long term.

The commissioner says that the ALJ could consider Hyde's improvement, citing *Smith v. Kijakazi*, No. 22-cv-163-slc, 2023 WL 4579444 (W.D. Wis. Jul. 18, 2023). But *Smith* is not instructive. In that case, the ALJ pointed to numerous pieces of evidence supporting the RFC despite the claimant's assertion that her improvement was temporary. *Id.* at *3–4. The ALJ did not do that in this case.

The evidence supporting a finding of disability in this case is far from overwhelming. But the court cannot say that the evidence is so one-sided that the ALJ's failure to explain his reasoning was harmless. So the court will remand the case to allow the ALJ to conduct a new credibility analysis regarding Hyde's physical limitations.

**B. Medical opinions**

The ALJ considered six medical opinions about Hyde's physical and mental limitations. Four of the opinions were from state-agency consultants, one was from Hyde's treating physician, and one was from a psychological consultant who examined Hyde once.

As previously discussed, state-agency physicians Fowler and Young concluded that Hyde could perform light work with some additional limitations related to bending and grasping. R. 87, 100. The ALJ found the opinions to be partially persuasive, but that they did not include sufficient postural limitations. R. 29.

State-agency psychologists Jason Kocina and Stephen Kleinman reviewed the medical records and found that Hyde had moderate limitations in understanding, remembering, and applying information, concentrating, persisting, and maintaining pace, and adapting and managing himself. As for interacting with others, Kocina found a mild limitation; Kleinman found a moderate limitation. The ALJ found these opinions to be partially persuasive, and he sided with Kocina that Hyde had only a mild limitation in interacting with others.

Treating physician Levi Stodola found that Hyde could: walk only one or two city blocks; stand for 30 minutes at a time; sit, stand, or walk for no more than two hours of an eight-hour workday; occasionally lift and carry up to ten pounds. Stodola also found that Hyde would need to take eight to ten unscheduled work breaks for up to ten minutes over an eight-hour workday, and he would be off task 25 percent of the time. R. 29.

Psychologist Kurt Weber examined Hyde on one occasion, concluding that Hyde suffered from anxiety and had mild or moderate limitations in various mental abilities. R. 471. The ALJ found Weber's opinion to be persuasive. R. 31.

When considering how much weight to give a medical opinion, the ALJ is required to explain how well supported the opinion is and how consistent it is with other evidence in the record. 20 C.F.R. § 404.920c(a); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The court understands Hyde to be raising two objections about the ALJ's handling of these opinions: (1) he did not adequately explain why he found Fowler and Young to be more persuasive than Stodola regarding Hyde's physical limitations; and (2) he did not incorporate into the RFC a restriction to performing jobs with no more than two or three steps.

8

### 1. Physical limitations

The ALJ provided two reasons for rejecting Stodola's opinion in favor of the stage-agency physicians' opinion that Hyde could perform light work: (1) Stodola did not explain the basis of his opinion; and (2) the medical evidence was inconsistent with Stodola's opinion.

The ALJ's first criticism of Stodola's opinion is fair. Stodola's only basis for his opinion was that an x-ray showed disc-space narrowing and osteophytes in Hyde's lumbar region. R. 658. The x-ray may have shown that there was a medical basis for Hyde's symptoms, but it does not establish the severity of those symptoms or any specific functional limitations. But the state-agency physicians' opinions have the same problem. As Hyde points out, the state-agency physicians do not explain the basis of their opinions either. Like the ALJ himself, they summarize various medical records, but they do not explain how those records support a finding that Hyde can perform light work.

That leads to the ALJ's second criticism that Stodola's opinion is inconsistent with the record. As noted in the context of discussing Hyde's subjective symptoms, the ALJ did not explain how any of Hyde's medical records undermined a finding of disability.

The ALJ failed to explain how the state-agency physicians' opinions were more supported or more consistent with the record than Stodola's opinion, so the court will remand the case to allow the ALJ to reconsider that issue.

### 2. Ability to follow instructions

When discussing Hyde's abilities related to concentration, persistence, and pace, the state-agency psychologists wrote, "The clmt should be able to focus to complete tasks requiring 2-3 steps but might have increasing difficulty with more complex tasks." R. 91, 101. Based on

9

that opinion, Hyde says that the ALJ should have incorporated a restriction into that RFC that Hyde could not perform jobs requiring more than two or three steps. The commissioner disagrees for three reasons: (1) Hyde has not shown a conflict between a restriction to two-or-three step instructions and the RFC's restriction to jobs that involve "simple instructions and routine tasks"; (2) if there is a conflict, the ALJ reasonably interpreted the psychologists' opinion; (3) if the ALJ incorrectly interpreted the psychologists' opinion, his decision not to restrict Hyde to jobs requiring no more than two or three steps is supported by substantial evidence.

The court agrees with each of the commissioner's contentions. First, Hyde does not identify a conflict between jobs requiring "simple instructions and routine tasks" and jobs requiring no more than two or three steps. He says only that "the Court cannot be sure that the result would have been the same" if the ALJ had included a two-to-three step limitation in the RFC. Dkt. 8, at 13. But it is Hyde's burden to prove a conflict, not the commissioner's burden to prove there isn't one. *See Thorlton,* 127 F.4th at 1080–81.

Second, the court also agrees with the commissioner that the state-agency psychologists either did not see a difference between a two-to-three step limitation and a simple-instructions limitation or they did not intend to restrict Hyde to two or three steps. The psychologists stated that Hyde "might" have increasing difficulty" with "more complex tasks," but they did not limit Hyde to a certain number of steps. Rather, in the summary of their opinion, they stated that Hyde is "capable of performing and sustaining the basic mental demands of unskilled work." R. 92. That is consistent with the RFC.

Third, and finally, the court concludes that the ALJ's RFC as it relates to mental limitations is supported by substantial evidence. The ALJ gave multiple reasons for why he did

not impose a more restrictive RFC, including that Hyde performed adequately on his mental status examinations and his activities of daily living included conduct that required more than three steps, such as shopping and driving. R. 31.

Hyde does not meaningfully challenge those reasons. He says that a consultant recommended that he receive psychotherapy and that both the state-agency psychologist and a consultant found moderate limitations in various mental abilities. Dkt. 8, at 12. But Hyde does not explain how that evidence shows that he is unable to perform more then three-step instructions. So the court concludes that substantial evidence supports the ALJ's RFC as it relates to Hyde's mental limitations.

## CONCLUSION

The court will remand the case for reconsideration of the following issues: (1) Hyde's subjective complaints regarding his physical limitations; and (2) the medical opinions of Levi Stodola, William Fowler, and Marc Young regarding Hyde's physical limitations. The court affirms the ALJ's decision as it relates to Hyde's mental limitations.

ORDER

IT IS ORDERED that that the decision of the commissioner is REVERSED in part and AFFIRMED in part, and the case is REMANDED for further proceedings consistent with this opinion.

Entered March 24, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge